# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:16-cv-20146-COOKE/TORRES

MAHMOUD SHAKER,

     Plaintiff,

v.

AKIMA GLOBAL SERVICES, LLC,

     Defendant.

_____/

## ORDER DENYING MOTION FOR REMAND

Defendant Akima Global Services, LLC ("Defendant" or "AGS") removed this case from state court based on diversity and federal officer jurisdiction. Plaintiff Mahmoud Shaker ("Plaintiff" or "Shaker") challenges Defendant's removal in its Motion for Remand to State Court ("Motion") (ECF No. 11). I have reviewed the parties' arguments, the record, and the relevant legal authorities. For the reasons explained in this Order, Plaintiff's Motion is denied.

### I. BACKGROUND

Plaintiff brings this negligence action against Defendant stemming from injuries he sustained under Defendant's custody. Shaker was a detainee at Krome Detention Center ("Krome"), which the Department of Homeland Security ("DHS") owns and AGS operates. Shaker alleges AGS breached its duty of care during his stint with the facility's Voluntary Work Program ("VWP").

On September 14, 2015, an AGS employee allegedly instructed Shaker to enter a restricted storage room area to fill containers with chemical solutions, despite Shaker not having any training or safety equipment. The fumes in the room affected Shaker, causing him to collapse and a large amount of chemicals to land on him. As a result, Shaker suffered serious and permanent chemical burns on his eyes, faces, and body. Shaker alleges that the amount in controversy exceeds the state court jurisdictional amount of $15,000.00 but did not otherwise specify the amount of damages sought.

1

AGS filed a Notice of Removal on January 11, 2016 (ECF No. 1). It argues diversity jurisdiction is facially apparent from the Complaint due to the nature of Shaker's alleged injuries. AGS also contends federal officer jurisdiction applies since Shaker's claims arise from acts AGS took under its DHS service contract and federal regulations.

Shaker disputes both of AGS's reasons for removal. He believes that the amount in controversy is unclear since he has requested an unspecified amount of damages. Further, Shaker believes federal officer jurisdiction is inappropriate since the case involves the actions of a private company subject to appropriate state tort law.

## II. LEGAL STANDARD

A defendant may remove an action to federal court if that district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). The burden of establishing the court's jurisdiction lies with the removing party. *See Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 752 (11th Cir. 2010);*Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir.2001). Because "[f]ederal courts are courts of limited jurisdiction," *Russell Corp. v. Am. Home Assur. Co.,* 264 F.3d 1040, 1050 (11th Cir.2001), " '[r]emoval statutes are construed narrowly.' " *Blinc, Inc. v. AZ Miami Corp.,* 2015 A.M.C. 2124 (S.D. Fla. 2015) (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994)). Accordingly, remand is appropriate when the court's jurisdiction is doubtful. *See Benkert v. Capital One Bank (USA), N.A.*, 12-22580-CIV, 2013 WL 1136435, at *1 (S.D. Fla. 2013).

## III. DISCUSSION

### A. Diversity Jurisdiction

Plaintiff argues Defendant has not met its burden of proving the requisite jurisdictional amount in controversy, indicating that Plaintiff has made a claim for unspecified damages. I disagree and believe jurisdiction is proper from the face of the complaint.

Federal district courts have original jurisdiction over all civil actions between parties of diverse citizenship where the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a). " 'Where jurisdiction is based on a claim for indeterminate damages . . . the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim . . . meets the jurisdictional minimum.' " *Dibble v. Avrich*, No. 14-

CIV-61264, 2014 WL 5305468, at *5 (S.D. Fla. Oct. 15, 2014) (quoting *Federated Mut. Ins. Co. v. McKinnon Motors*, 329 F.3d 805, 807 (11th Cir. 2003)).

"When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir. 2001). The court may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations," and should not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 – 62 (11th Cir. 2010). The amount in controversy is considered facially apparent from the complaint if the claim is "specific enough as to the duration, extent, severity, or kind of harms alleged such that the court could hazard a reliable estimate as to the value of such claims, were [the plaintiff] to prevail." *Moore v. CAN Found.*, 472 F. Supp. 2d 1327, 1131 (M.D. Ala. 2007). Further, "[i]n making this determination, the court is not bound by the plaintiff's representations regarding his or her claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought." *Jones v. Novartis Pharm. Co.*, 952 F. Supp. 2d 1277, 1282 – 83 (N.D. Ala. 2013) (citing *Roe*, 613 F.3d at 1061). Conclusory allegations are insufficient. *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352-53 (1961). Rather, the party must set forth the underlying facts supporting such an assertion.

The Complaint here outlines severe injuries for Plaintiff. In particular, it alleges Shaker was exposed to dangerous and toxic chemical solutions, which led to serious and permanent injuries to his face, eyes, and body. What is more, Plaintiff alleges that because of AGS's (in)actions, Shaker's injuries aggravated a pre-existing condition and physical handicap, and caused "mental anguish, loss of earnings in the past and in the future, and incurr[ing of] medical expenses for his care and treatment." Compl. ¶ 11, ECF No. 1. Shaker adds that these "injuries are either permanent or continuing in their nature and . . . Plaintiff will continue to suffer such losses and impairments in the future." *Id*. Taken together, common sense leads me to conclude that the severity of Shaker's injuries exceed $75,000.00. *Cf. Gardner v. Mgmt. & Training Corp.,* 4:14CV284-RH/CAS, 2014 WL 3039335, at *2 (N.D. Fla. 2014) (denying motion to remand when the plaintiff's complaint alleged that the defendant's "acts obstructed his ability to obtain employment . . . , that he suffered

damages, and that the damages '[were] continuing and will not abate in the future.' "). Based on reasonable deductions, inferences, and extrapolations from the pleadings, it is facially apparent from Shaker's Complaint that removal was appropriate under diversity jurisdictional grounds.

    B. <u>Federal Officer Jurisdiction</u>

Even if diversity jurisdiction was not present, this case is also removable under federal officer jurisdiction. A federal court has jurisdiction under 28 U.S.C. § 1442(a)(1) to hear an action against any person acting under the direction of the United States or its agencies, so long as all statutory prerequisites are satisfied. *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).

Removal under § 1442(a)(1) is proper when the defendant (1) cites a "colorable defense arising out of [its] duty to enforce federal law," and (2) demonstrates "that the suit is for acts performed under the color of office." *Marley v. Elliot Turbomachinery Co., Inc.*, 545 F. Supp. 2d 1266, 1271 (S.D. Fla. 2008) (internal quotation marks omitted). Defendant meets the second prong when there is "a causal connection between what the officer has done under asserted official authority and the action against the defendants." *Id.*

    *1. Colorable Defense*

Colorable defenses are interpreted broadly. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969) (finding an officer was not required to "win his case before he c[ould] have it removed."). As such, "no determination of fact is required at the removal stage." *Marley*, Inc., 545 F. Supp. 2d at 1271. Thus, a colorable defense must merely be plausible to succeed. *See id*. If the defendant makes a showing that his defense "is not without foundation and made in good faith[,]" then removal is proper. *See id*. (internal quotation marks omitted).

In particular, Defendant asserts the federal government contractor defense. To assert this defense, a defendant must show that the case (1) "concern[s] an area of uniquely federal interest," and (2) where "a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law,' or the application of state law would 'frustrate specific objectives' of federal legislation". *Dorse v. Eagle-Picher Indus., Inc.*, 898 F.2d 1487, 1488 (11th Cir. 1990) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988)). "The defense fails as a matter of law, however, if the contractor can comply with both its

contractual obligations and the state-prescribed duty of care." *Marley*, 545 F. Supp. 2d 1266, 1272 (S.D. Fla. 2008). A significant conflict may exist here if "(1) the government approved reasonably precise specifications, (2) the equipment conformed to those specifications, and (3) the supplier warned the United States about dangers known to the supplier but not known to the United States." *Boyle*, 487 U.S. at 501.

Both contractor defense elements are present here. First, the contract between the DHS and AGS for maintaining a federal detention facility, and the parties' responsibilities therein, is a uniquely federal interest. *See Boyle,* 487 U.S. at 504. Parties do not seriously dispute this point. I also find AGS has outlined the potential significant conflicts it faces between its contract duties with DHS and what Florida negligence law commands with respect to duties of care. It has outlined how DHS approved the reasonably precise specifications of the detention center, that the center's facilities conformed to DHS's specifications, and that AGS warned of any dangers at the facility known to it and not DHS.

To buttress these points, AGS provides affidavits from Michelle Jones ("Jones"), AGS's Contract Project Manager, and Gary Fletcher ("Fletcher"), DHS Contracting Officer's Representative for Krome, that represent AGS's actions serve to meet DHS's policies and practices at the facility. *See* ECF Nos. 15-1, 15-2. Notably, Jones remarks that she meets regularly with Fletcher, see ECF No. 15-1 at ¶ 3, and that AGS complies with a DHS Statement of Objectives ("SOO"), which outlines the specific scope of services under AGS's contract with DHS, along with several other federal directives and standards. *Id.* ¶¶ 4, 6. These instructions even outline the handling of chemicals used for cleaning. *Id.* ¶ 12. Jones also remarks that her team "would advise DHS/ICE of any dangers, problems or issues concerning Krone known to AGS, but not to DHS/ICE." *Id.* at ¶ 3. Fletcher adds in his affidavit that AGS "must comply with detailed requirements concerning access to and storage of cleaning supplies utilized by detainees to clean designated areas—including bathrooms and living quarters." ECF No. 15-2 at ¶ 9. He also states that "in order to assist DHS/ICE in maintaining the general cleanliness of the Krome facility, the AGS service contract requires AGS security guards to oversee DHS/ICE's Voluntary Work Program." *Id.* at ¶ 10.

Plaintiff contends AGS does not have a colorable federal defense because AGS failed to perform its duties under its DHS contract. Plaintiff cites to Defendant's alleged failure in

following various DHS specifications, such as maintaining post orders, log books, and regularly reporting to DHS. *See* ECF No. 15; *Cf. Jama v. U.S. I.N.S.*, 334 F. Supp. 2d 662, 689 (D.N.J. 2004) (finding on summary judgment the government contractor defense did not apply, in part, because contractor failed to abide by the Government's contract terms). These purported breaches, however, do not preclude Defendant from asserting a colorable defense at this early stage of litigation. I find the affidavits "provide a good faith foundation to show" that AGS has a colorable government contractor defense at this point. *Marley*, 545 F. Supp. 2d at 1273.

### 2. Acting Under the Color of Office

A defendant "need[s] to show that 'his relationship to the plaintiff 'derived solely from his official duties.' " *Marley* 545 F. Supp. 2d at 1273 (quoting *Magnin,* 91 F.3d at 1427–28). A private contractor seeking federal officer jurisdiction must show that its actions went "beyond simple compliance with the law and help[ed] [a federal officer or agency] fulfill other basic governmental tasks." *Watson v. Philip Morris Cos., Inc.,* 551 U.S. 142, 153 (2007). As mentioned, there must also be a causal nexus between a defendant's actions under official authority and a plaintiff's actions against it. *See Marley*, 545 F. Supp. 2d at 1271.

Plaintiff's arguments on this issue fail. First, Defendant may qualify for federal officer jurisdiction even if no federal officers or employees were involved in Shaker's accident. *See Watson*, 551 U.S. at 151 – 52. Plaintiff also incorrectly believes AGS had such extensive control over the VWP that it did not act under DHS's direction. As discussed earlier, AGS has provided affidavits from Jones and Fletcher that, at least at this point, suggest DHS exerted control over the VWP and chemical solutions handling at issue here.

Thus, AGS was acting under the direction of DHS when Shaker was allegedly instructed to enter the storage room as part of the VWP. The affidavits and relevant contract language sufficiently show that Defendant helped carry out DHS's duties and tasks at Krome. The requisite casual nexus is present here since AGS operated the VWP under DHS's direction, and Shaker's injuries occurred as a result of working in the program. Thus, federal officer jurisdiction is proper.

### IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that Plaintiff's Motion to Remand to State Court (ECF No. 11) is **DENIED**.

**DONE and ORDERED** in chambers at Miami, Florida, this 7th day of September 2016.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*